IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:06CR474-1 |
| | ) | |
| | ) | |
| RODNEY ANTON WILLIAMSON | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Rodney Anton Williamson's pro se Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Doc. #384]. Williamson argues that "[t]he reduced mandatory sentence in 21 U.S.C. §841(b)(1)(A), the new definition of a **'serious drug felony'**, the Covid-19 pandemic, his non-violent background and significant rehabilitation, combined constitute" extraordinary and compelling reasons warranting a sentence reduction. After the Government responded to Williamson's motion and just two days before Williamson mailed his reply, the Fourth Circuit Court of Appeals published its decision in United States v. McCoy, 981 F.3d 271 (2020). The parties were requested to – and did – supplement their briefs as to the impact, if any, of McCoy on Williamson's motion. For the reasons explained below, his motion is denied.

On December 7, 2007, Williamson was sentenced to life imprisonment for conspiracy to distribute cocaine hydrochloride, a sentence which was reduced to 360 months in January 2017 by a presidential grant of clemency. "The court may not modify a term of imprisonment once it has been imposed except", as is

relevant here, "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier". 18 U.S.C. § 3582(c)(1)(A). Williamson's warden received his June 16, 2020 request for compassionate release and denied it on June 22, prompting Williamson to pursue an appeal. Although the precise date the warden received Williamson's request is unknown, it is clear that thirty days had lapsed since the warden's receipt by the time Williamson filed the instant motion. Therefore, as the Government acknowledges, he has exhausted his administrative requirements.

Williamson must next meet his burden of showing that an extraordinary and compelling reason warrants a sentence reduction, see 18 U.S.C. § 3582(c)(1)(A)(i), and this he has not done. He claims that "[t]he change in the mandatory minimum of §841(b)(1)(A), the **'serious drug felony'** definition, [his] non-violent background, and the significant rehabilitation that has taken place in [his] life while incarcerated, along with the Covid-19 pandemic, combined constitute, 'extraordinary and compelling' circumstances".

The primary basis upon which Williamson moves is the First Step Act's change to the type of drug offense conviction that can serve to enhance the statutory mandatory minimum sentence in 21 U.S.C. § 841 and the impact of that change on Williamson were he to be sentenced under present law. At the time Williamson filed his motion, the Government argued that it was inappropriate to

2

consider whether this change in the law was extraordinary and compelling because, in sum, the Court "lack[ed] the authority to" "independently define extraordinary and compelling circumstances" and, even if the Court could do so, "it cannot ignore Congress's express decision not to apply Section 401 of the [First Step Act] retroactively." Before this Court resolved the question, the Fourth Circuit Court of Appeals did so in McCoy.

The defendants whose appeals were consolidated in McCoy argued that the First Step Act's change to 18 U.S.C. § 924(c) was extraordinary and compelling as it related to each of them because, at the time of their sentencings, § 924(c) permitted "stacking" whereas now it does not. 981 F.3d at 274. This change would have the effect of reducing the defendants' sentences by decades each. Id. The Government argued first that "treating a disproportionately long sentence as an 'extraordinary and compelling' reason for a potential sentence reduction is not 'consistent with applicable policy statements issued by the Sentencing Commission,' as required by § 3582(c)(1)(A)". Id. at 280. Next, the Government contended that "even if consideration of the defendants' § 924(c) sentences were not precluded by § 1B1.13 [of the United States Sentencing Guidelines], the First Step Act's elimination of sentence-stacking still could not constitute an 'extraordinary and compelling reason' for compassionate release, mostly because Congress chose not to apply that change retroactively." Id. In other words, the Government's arguments in McCoy are similar to those made here.

3

The Fourth Circuit responded that "the consistency requirement simply is not implicated, for the threshold reason that there currently exists no 'applicable policy statement[]'" because, "in short, § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Id. at 281-82 (alteration in original). Cf. id. at 282 n.7 (noting, though, that § 1B1.13 "remains helpful guidance even when motions are filed by defendants"). "[A]s a result, district courts are empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." Id. at 284 (internal quotation marks omitted). As the Fourth Circuit explained,

> the district courts permissibly treated as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' § 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act. We emphasize, as did the district courts, that these judgments were the product of individualized assessments of each defendant's sentence. And we note that in granting compassionate release, the district courts relied not only on the defendants' § 924(c) sentences but on full consideration of the defendants' individual circumstances.

Id. at 286. These individual circumstances included "the defendants' relative youth – from 19 to 24 years old – at the time of their offenses", "the substantial sentences the defendants already had served at the time of their motions – from 17 to 25 years" meaning "each defendant had spent close to or more than half his life in prison", and "during that time, . . . each defendant had established excellent institutional records and taken substantial steps toward rehabilitation." Id.

Here, Williamson was indicted for conspiring to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine

4

hydrochloride, in violation of 21 U.S.C. § 846 and § 841(b)(1)(A). Prior to trial, the Government filed an Information of Prior Conviction pursuant to 21 U.S.C. § 851(a)(1) identifying two prior convictions for felony drug offenses which, at the time, were defined as offenses "punishable by imprisonment for more than one year . . .", 21 U.S.C. § 802(44). Specifically, Williamson had a May 1994 state conviction for possession with intent to sell and deliver a controlled substance (crack/cocaine) (92CRS68923) and a May 2000 state conviction for possession with intent to sell and deliver cocaine (99CRS032976). These two prior convictions for felony drug offenses subjected Williamson to a mandatory sentence of life imprisonment. 21 U.S.C. § 841(b)(1)(A) (2006) (also requiring a mandatory minimum sentence of twenty years if the defendant has one prior conviction for a felony drug offense and ten years if the defendant has no prior conviction for a felony drug offense).

Meanwhile, Williamson's guideline range was calculated using the 2007 United States Sentencing Guidelines Manual. A jury found him responsible for conspiring to distribute at least 400 kilograms of cocaine hydrochloride.[1] That drug amount combined with his managerial role in the conspiracy resulted in a total

---

[1] Williamson requests a hearing to determine the drug amount attributable to him, apparently because his 2007 sentence was driven by the statutory mandatory minimum whereas now his sentence would be informed by the United States Sentencing Guidelines. However, having heard the evidence at trial, a jury determined that he was responsible for conspiring to distribute "in excess of 400 kg" of cocaine hydrochloride. (Jury Verdict [Doc. #123].) No further hearing is necessary.

5

offense level of 40.  Williamson was also a career offender because of the same two convictions used to enhance his statutory penalties, but that designation did not ultimately affect his offense level.  It did, however, require a criminal history category of VI which, with a total offense level of 40, meant that Williamson's guideline range was 360 months to life, adjusted to life because of the statute.

The First Step Act changed not only the mandatory minimum sentences resulting from prior convictions but also the definition of which drug offenses now serve to enhance a sentence.  Now, a defendant with two prior convictions for "serious drug felon[ies]" faces a mandatory minimum sentence of twenty-five years. 21 U.S.C. § 841(b)(1)(A) (also providing for a mandatory minimum sentence of fifteen years if the defendant has one prior conviction for a serious drug felony and ten years if the defendant has no prior conviction).  A "serious drug felony" is one "for which a maximum term of imprisonment of ten years or more is prescribed by law", the defendant "served a term of imprisonment of more than 12 months", and the defendant's "release from any term of imprisonment was within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(57) (cross-referencing 18 U.S.C. § 924(e)(2)).

As a threshold issue, in light of McCoy, it is determined that the First Step Act's changes to 21 U.S.C. § 841(b)(1)(A) may be considered as part of the assessment of whether Williamson has presented extraordinary and compelling

6

reasons for compassionate release.[2] The Government argues that "although McCoy broadened district courts' discretion under § 3582(c)(1)(A), it envisions a system whereby courts remain cabined within a traditional discretionary framework" and emphasizes the individualized assessment of each defendant to determine if extraordinary and compelling reasons exist. According to the Government, "both before and after McCoy", Williamson "fails to meet the heightened standard required by § 3582(c)(1)(A)(i), and the defendant-specific factors, including the underlying facts of his crimes and his role therein, do not support a finding that he presents 'extraordinary and compelling' reasons for compassionate release." Furthermore, says the Government, consideration of the factors from 18 U.S.C. § 3553(a) "counsel against granting a reduction in Williamson's case" "[f]or the same reasons that Williamson's 360-month sentence is not 'extraordinary and compelling' in his particular case".

Williamson argues that his 1994 and 2000 state convictions are not "serious drug felon[ies]" under 21 U.S.C. § 841(b)(1)(A) because he did not serve a term of imprisonment greater than twelve months for either offense and, consequently, his mandatory minimum sentence would be ten years if he were sentenced today. He also appears to believe that those convictions can no longer serve as predicate offenses for his career offender designation, and argues elsewhere that his

---

[2] The Government notes that, at the time of its supplemental filing, no mandate had issued in McCoy and, in fact, the Government had been granted an extension of time to petition the Fourth Circuit for rehearing en banc. No petition was filed, and the mandate issued on January 22, 2021.

7

convictions for attempting to traffic in cocaine cannot serve as predicate offenses, such that his guideline range today would be 120 to 300 months.

Williamson's Presentence Report notes that he received a sentence of three years of imprisonment, suspended, and three years of probation (which was extended one year) for his 1994 conviction. In other words, he did not serve more than twelve months for that drug offense. He received a sentence of twelve to fifteen months of imprisonment with one day jail credit for his 2000 conviction. While less clear than for his 1994 conviction, it appears from his Presentence Report that he did not serve more than twelve months for his 2000 drug conviction. Without those qualifying prior convictions, Williamson would face a mandatory minimum sentence of ten years instead of the life sentence necessarily imposed in 2007.

Nevertheless, those two convictions remain predicate offenses for Williamson's career offender designation under the guidelines. Although he also argues that his convictions for attempting to traffic in cocaine are not qualifying offenses, those convictions were not identified as the predicates underlying his career offender designation. Instead, the Presentence Report relied on the 1994 and 2000 convictions for felony possession with intent to sell and deliver cocaine. In relevant part, a career offender is a defendant with "at least two prior felony convictions of . . . a controlled substance offense" which is defined as "an offense under federal or state law, punishable by imprisonment for a term exceeding one

8

year, that prohibits . . . the possession of a controlled substance . . . with intent to . . . distribute." U.S. Sentencing Guidelines Manual §§ 4B1.1(a), 4B1.2(b) (2018).

Both the 1994 and 2000 convictions for possession with intent to sell and deliver cocaine were punishable by a term exceeding one year. While Williamson's offense level would now be 38 as a result of changes to the drug table, his criminal history category remains a VI because of his career offender status and his guideline range remains 360 months to life, albeit without the mandatory conversion to life. Nevertheless, the President's grant of clemency already lowered Williamson's sentence to the bottom end of his guideline range. The question for this court, then, is whether extraordinary and compelling reasons warrant a further sentence reduction.

Williamson argues that there are, although he mistakenly believes that his new guideline range would be different than it is and, therefore, that the ten-year mandatory minimum he would face now plays a greater role in his sentence than it actually does. He identifies three disparities in support of his motion – the disparity between the mandatory minimum he faced at sentencing in 2007 and today's applicable mandatory minimum, the "gross disparity between the sentence [he] received for his minor state conviction and the sentence he received for his federal conviction", and the disparity between his sentence and those of "similarly, situated defendants that were convicted on an associated indictment."

He also argues that he has now served 100 percent of his mandatory minimum sentence, he has no charges or convictions for violent crimes, his risk of

9

recidivism is low according to the Bureau of Prisons, his family's "severe hardship during [his] incarceration" serves as a specific deterrent, and his prior convictions do not reflect his character.  He believes that his "age, nonviolent background and exceptional rehabilitation over the past 12 years" provide further support for finding extraordinary and compelling reasons for release, and he submitted a copy of his May 2019 Individualized Reentry Plan, the Bureau of Prison's December 2019 assessment of his recidivism risk as low, letters from his family and community, and a letter describing a job offer upon his release at which time he intends to live with his mother.  And, although he initially stated he had no health issues, more recently he relies on his chronic allergies and the risks from contracting COVID-19.

Williamson has not met his burden of showing extraordinary and compelling reasons for compassionate release.  First, as explained above, if indeed Williamson would face a mandatory minimum term of imprisonment of ten years, rather than life, were he sentenced today, his guideline range would far exceed that minimum term at 360 months to life.  That guideline range was driven in 2007 – and would be so today – by the quantity of cocaine a jury found attributable to Williamson, his managerial role in the office, and his designation as a career offender.  This is not a case like those in McCoy.  It is true that Williamson's guideline range would not necessarily convert to life as it did in 2007, but the range is otherwise the same as it was then, and his life sentence was reduced to the low end – 360 months – by presidential clemency in 2017.  In other words, the term of

10

imprisonment he is currently serving is the low end of the guideline range that would be applicable were he sentenced today.

At the time of the instant offense, described more fully below, Williamson was in his early thirties and already a career offender, as previously noted. In addition to the 1994 and 2000 convictions for felony sell and deliver cocaine, he had felony convictions for possession of cocaine (3rd degree), maintain vehicle/dwelling/place for controlled substance, attempt to traffic by possessing, and attempt to traffic by transporting. In other words, his felonious criminal history involved the very same controlled substance – cocaine – that he would go on to distribute in the instant offense. To his credit though, as he highlights, none of these crimes involved violence or firearms. Williamson contends that the "gross disparity" between the "minor" sentences for his state convictions and that for his federal crime is extraordinary and compelling.[3] Experience shows that defendants often face longer terms of imprisonment for violating federal criminal laws as a result of various factors. While such a scenario may factor into the application of 18 U.S.C. § 3553(a) at sentencing, it is not here extraordinary and compelling.

Undeterred by his previous drug convictions, Williamson led other conspirators into the sophisticated "smuggling [of] multi-kilograms of cocaine hydrochloride into the United States" (Presentence Report ¶ 7), the instant offense

---

[3] Williamson describes circumstances surrounding his 1994 and 2000 pleas of guilt, but the facts as he presents them are not properly before this Court nor do they affect Williamson's argument.

11

conduct. The conspiracy spanned St. Thomas to North Carolina to New York and involved the use of luggage and vehicles with hidden compartments, the bribing of customs officials in St. Thomas, and the recruitment of Transportation Security Administration officials at airports in North Carolina and New York. (E.g., id. ¶ 9.) Williamson managed the operation by directing the actions of co-conspirators and confidential informants. (E.g., id. ¶¶ 11-20.) The jury found him guilty of distributing more than 400 kilograms of cocaine. (Id. ¶ 27.)

Williamson contends that his sentence and those of his similarly situated co-defendants are disparate, but he does not explain how. In 2007, his sentence was dictated by the statutory mandatory minimum resulting from his criminal history, a term of imprisonment later reduced to 360 months. As explained above, were his guideline range calculated today, it would be 360 months to life because of his offense conduct and his criminal history. He claims that his sentence is double that of his co-defendants and appears to cite to the guideline range of a co-conspirator who was prosecuted in the District of the Virgin Islands but he does not explain how they are similarly situated nor why their respective sentences are so disparate based on the men's similarities.

The Bureau of Prisons determined Williamson's risk of recidivism in December 2019 to be low. Now in his mid-forties, Williamson argues that his age makes him less likely to recidivate, and research shows that recidivism decreases with age, see U.S. Sentencing Comm'n, The Effects of Aging on Recidivism Among Federal Offenders (Dec. 2017). He also argues that the hardship his family

12

has suffered during his incarceration, including the death of his youngest son, his daughter having children of her own, his oldest son's felony charges, his mother's medical issues, and the lack of Williamson's financial support, "are a direct result of [his] past conduct" and will deter him from criminal activity. He describes the deprivation of his "ability to be with his loved ones" and that a reduced sentence "will at least start the healing process for past mistakes."

It is not unusual for defendants' families to bear the burden of incarceration, as Williamson describes of his family. At the time he committed the instant offense, he had three minor children – then ages four, seven, and nine, the oldest two of whom resided with him. While his mother described him as an "attentive father", he nevertheless participated in and managed a large-scale drug smuggling conspiracy at the same time. He even acknowledges that "[a] drug trafficking offense is an offense against the community." It is commendable that his family's wellbeing is forefront in his mind and that it may deter him from future criminal conduct. However, their welfare was an insufficient deterrent at the time of the instant offense, and it is not the Court's obligation to lessen the burden that Williamson placed on them in the first place.

To the extent that Williamson otherwise relies on his family's situation as an extraordinary and compelling reason for release, it is not akin to those family circumstances described as extraordinary and compelling by the Sentencing Commission. See U.S. Sentencing Guidelines § 1B1.13 Application n.1(C) (describing as extraordinary and compelling family circumstances the death or

13

incapacitation of the defendant's minor child's caregiver or the incapacitation of the defendant's spouse or partner where the defendant would be the only available caregiver).

Williamson contends that his criminal history does not reflect his character and that he has used his time in custody to assess the risks versus rewards of criminal activity. He relies on his self-described "exceptional rehabilitation" as support for his release. He describes his "performance while in custody [as] clearly show[ing] a man who has profited and matured" and describes himself as "a model inmate all of his time in custody", evidenced in part by his "consistent work history for over the past decade" and only "one minor infraction that did not result in loss of any privileges or good time." He believes that he is able to "re-enter society with the mental and vocational skills necessary to ensure that he is [a] dependable and responsible member of society." He submitted a July 2020 letter from All Systems Restored HVAC & Electrical stating that upon his release, the business "is prepared to offer him full-time employment at 40 hours per week with benefits after 90 days of employment to assist him with his transitional plan."

Williamson has done many things well while in the custody of the Bureau of Prisons, evidenced in part in his May 2019 Individualized Reentry Plan. At the time, he had earned his GED and participated in classes, he was working and received "satisfactory work reports from the detail supervisor", and he had no disciplinary incidents in the previous six months. It is apparent from letters he submitted that his family and close friends love him, believe in him, and have seen

14

him grow while incarcerated. And, as noted above, All Systems Restored is ready to offer Williamson employment upon release. This community support system is encouraging for Williamson, now and in the future.

Yet, it was also noted in his May 2019 Individualized Reentry Plan that "[s]ince last team meeting he has not completed any programs due to lack of interest", he had "declined Drug Education classes", and he had "not saved any money for release as recommended due to lack of interest." He was encouraged to enroll in "ACE (Grammar Refresher, Math Refresher, Critical Decision Making) or a Vocational Education classes (CDL, Car Care Maintenance, Welding)" and other "Apprenticeship programs (Baker, Cook, Electrician, Maintenance, HVAC, etc.) for [him] to obtain skill for future employment". It is not known whether Williamson heeded that advice and pursued further education and vocational training. At the time of his May 2019 team meeting, in addition to his GED courses, he had participated in the following classes: study of ethics, psychology self-study, criminal thinking processes, injury prevention, men's health, parenting, crochet, health fair, keyboarding, and wellness at risk. As noted above, the last time he had participated in a class was May 2018.

Williamson's earning of his GED, work performance and apparent consistent work history, and self-described nearly clean disciplinary history are important steps in the right direction. But, his recorded lack of interest in the pursuit of educational or vocational training or saving money – all in preparation for reentry into the community – does not reflect "exceptional rehabilitation", much less

15

support extraordinary and compelling reasons for release. And, while he notes that he has served 100 percent of what would be a ten-year mandatory minimum sentence under present 21 U.S.C. § 841(b)(1)(A), he has served not yet served fifty percent of his guideline sentence, (see Inmate Data [Doc. #386-1]).

Finally, Williamson understandably expresses concern about contracting COVID-19 while in custody. Initially, he "report[ed] that he does not have any health issues and that he is generally healthy", but that "the threat from COVID-19" combined with his other bases for relief constitutes an extraordinary and compelling reason for relief. More recently, he contends that his chronic allergy problems can cause an asthma attack and COVID-19 "can become life threatening." He describes a November 2020 outbreak of COVID-19 at FCI Ashland where he is housed, the facility's inability to keep inmates safe, and the lack of mask-wearing, social distancing, and medical care.

Williamson's Presentence Report notes his "chronic allergies" for which he took medication. Yet, suffering from allergies is not among the medical conditions recognized by the Centers for Disease Control and Prevention as increasing the risk of severe illness from the virus that causes COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020). And, while FCI Ashland has a significant history of inmates and staff reported as positive for COVID-19, including six inmates who have died, presently no inmates and three staff members

16

are reported as positive. https://www.bop.gov/coronavirus/ (reporting 347 inmates and 56 staff members who have recovered as of Jan. 28, 2021).

In sum, Williamson has not met his burden of showing extraordinary and compelling reasons supporting release, as neither the change in 21 U.S.C. § 841(b)(1)(A), nor Williamson's non-violent background, efforts towards rehabilitation, low recidivism risk, family circumstances, and community support, nor COVID-19 – together or individually – are sufficient.[4]

For the reasons explained in this Memorandum Opinion, IT IS HEREBY ORDERED that Defendant Rodney Anton Williamson's pro se Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Doc. #384] is DENIED.

This the 29th day of January, 2021.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge

---

[4] Because it is determined that there are no extraordinary and compelling reasons warranting a sentence reduction, it is unnecessary to assess the application of the factors from 18 U.S.C. § 3553(a).

17