IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:06CR474-1 |
| | ) | |
| | ) | |
| RODNEY ANTON WILLIAMSON | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Rodney Anton Williamson's pro se Motion for Reconsideration [Doc. #395]. In his motion for compassionate release, Williamson had argued that "[t]he reduced mandatory sentence in 21 U.S.C. §841(b)(1)(A), the new definition of a **'serious drug felony'**, the Covid-19 pandemic, his non-violent background and significant rehabilitation, combined constitute" extraordinary and compelling reasons warranting a sentence reduction. (See Mot. [Doc. #384].) His motion was denied because, even if he were no longer subject to enhanced statutory penalties, his guideline range remained unchanged because of his career offender status (a conclusion made in error as explained below), attributable drug quantity, and role in the offense and no extraordinary and compelling reasons warranted reducing his sentence. (See Mem. Op. & Order (Jan. 29, 2021) [Doc. #394].) Williamson asks the Court to reconsider that denial because he maintains that his 2000 conviction which served as a predicate offense for his career offender designation is for attempted drug trafficking and, therefore, cannot support such a designation. He also requests

"appointment of counsel to litigate how many criminal history points he will have and his new base offense level." For the reasons explained below, his motion is denied.

As an initial matter, the Sixth Amendment right to counsel does not extend beyond the first appeal of right. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). In exceptional circumstances, due process may require appointment of counsel in certain postconviction proceedings, but Williamson's instant motion is not among those. See United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000) (denying appointment of counsel for § 3582(c) motion to reduce sentence). Cf. 18 U.S.C. § 3006A(a)(2)(B) (authorizing the court to provide counsel to a financially eligible person seeking relief under 28 U.S.C. §§ 2241, 2254, or 2255 when "the interests of justice so require"). Accordingly, his request for appointment of counsel is denied.

At sentencing, Williamson was determined to be "a career offender within the meaning of USSG §4B1.1" because, in relevant part, he had "been convicted of two counts of Felonious Possession With Intent to Sell and Deliver Cocaine, controlled substance offenses" and "the instant offense [was] a controlled substance offense". (Presentence Report ¶ 36.) Williamson insists that his "May 31, 2000 state conviction **(99 CRS 032976)** is not a conviction for possession with intent to sell and deliver cocaine" but is one for attempted trafficking by possession. He asserts that the possession with intent to sell and deliver cocaine

2

"has been mistakenly listed by the United States in its **§851(a)(1)** notice and the United States probation officer in the Presentencing report."

First, as to the § 851(a)(1) notice of prior convictions, the Court previously explained that it appeared Williamson would no longer be subject to an enhanced statutory penalty were he sentenced today, which has since been confirmed by the United States Probation Office, (see U.S. Prob. Office Memo. (Feb. 24, 2021) [Doc. #396]).

Next, as to Williamson's argument that he is no longer a career offender, he is correct, albeit for a more fundamental reason than those he advances – his instant offense of conviction is not a controlled substance offense as that term is used in § 4B1.1 of the United States Sentencing Guidelines ("Guidelines"). The Guidelines define a career offender as someone who "was at least eighteen years old at the time [he] committed the instant offense of conviction", "the instant offense of conviction is a felony that is . . . a controlled substance offense", and he "has at least two prior felony convictions of . . . a controlled substance offense." U.S. Sentencing Guidelines § 4B1.1(a). A "controlled substance offense" is an "offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . ", id. § 4B1.2(b), including "the offenses of aiding and abetting, conspiring, and attempting to commit such [an] offense[]", id. § 4B1.2(b) cmt n.1.

3

Williamson's instant offense of conviction is conspiracy to distribute cocaine hydrochloride in violation of 21 U.S.C. § 841 and § 846. In United States v. Whitley, 737 F. App'x 147, 149 (June 12, 2018), the Fourth Circuit Court of Appeals held, albeit in an unpublished opinion, that a conviction for conspiracy to distribute in violation of 21 U.S.C. § 846 is not categorically a controlled substance offense for purposes of the career offender designation. This is so because a conviction under § 846 does not require an overt act and, therefore, "it criminalizes a broader range of conduct than that covered by generic conspiracy" listed in § 4B1.2 cmt n.1 of the Guidelines. Id. (internal quotations and citation omitted). Therefore, were Williamson sentenced today, he would no longer be considered a career offender. Accordingly, it is unnecessary to assess the arguments he advances about his 2000 predicate conviction and its impact on his career offender status.

Without his career offender designation, Williamson's guideline range becomes 292 to 365 months' imprisonment. His five criminal history points lead to a Criminal History Category III, and his Total Offense Level becomes 38 as a result of the drug amount the jury attributed to him and his offense role.

Nevertheless, Williamson has failed to meet his burden to show that extraordinary and compelling reasons warrant a reduction of his present 360-month term of imprisonment. First, his 360-month term of imprisonment is within the guideline range that would be applicable today. Furthermore, at the time of the instant offense, he was in his early thirties and had already amassed a criminal

4

history with convictions for felony possession with intent to sell and deliver cocaine, felony possession of cocaine, felony maintaining a vehicle, and felony attempted trafficking. As previously explained in the January 29, 2021 Memorandum Opinion and Order,

> his felonious criminal history involved the very same controlled substance – cocaine – that he would go on to distribute in the instant offense. To his credit though, as he highlights, none of these crimes involved violence or firearms. Williamson contends that the "gross disparity" between the "minor" sentences for his state convictions and that for his federal crime is extraordinary and compelling. Experience shows that defendants often face longer terms of imprisonment for violating federal criminal laws as a result of various factors. While such a scenario may factor into the application of 18 U.S.C. § 3553(a) at sentencing, it is not here extraordinary and compelling.
>
> Undeterred by his previous drug convictions, Williamson endeavored with other conspirators into the sophisticated "smuggling [of] multi-kilograms of cocaine hydrochloride into the United States" (Presentence Report ¶ 7), the instant offense conduct. The conspiracy spanned St. Thomas to North Carolina to New York and involved the use of luggage and vehicles with hidden compartments, the bribing of customs officials in St. Thomas, and the recruitment of Transportation Security Administration officials at airports in North Carolina and New York. (E.g., id. ¶ 9.) Williamson managed the operation by directing the actions of co-conspirators and confidential informants. (E.g., id. ¶¶ 11-20.) The jury found him guilty of distributing more than 400 kilograms of cocaine. (Id. ¶ 27.)
>
> Williamson contends that his sentence and those of his similarly situated co-defendants are disparate, but he does not explain how. In 2007, his sentence was dictated by the statutory mandatory minimum resulting from his criminal history, a term of imprisonment later reduced to 360 months. As explained above, were his guideline range calculated today, it would be [292 to 365] months . . . because of his offense conduct and his criminal history. He claims that his sentence is double that of his co-defendants and appears to cite to the guideline range of a co-conspirator who was prosecuted in the District of the Virgin Islands but he does not explain how they are similarly situated nor why their respective sentences are so disparate based on the men's similarities.

5

The Bureau of Prisons determined Williamson's risk of recidivism in December 2019 to be low. Now in his mid-forties, Williamson argues that his age makes him less likely to recidivate, and research shows that recidivism decreases with age, see U.S. Sentencing Comm'n, The Effects of Aging on Recidivism Among Federal Offenders (Dec. 2017). He also argues that the hardship his family has suffered during his incarceration, including the death of his youngest son, his daughter having children of her own, his oldest son's felony charges, his mother's medical issues, and the lack of Williamson's financial support, "are a direct result of [his] past conduct" and will deter him from criminal activity. He describes the deprivation of his "ability to be with his loved ones" and that a reduced sentence "will at least start the healing process for past mistakes."

It is not unusual for defendants' families to bear the burden of incarceration, as Williamson describes of his family. At the time he committed the instant offense, he had three minor children – then ages four, seven, and nine, the oldest two of whom resided with him. While his mother described him as an "attentive father", he nevertheless participated in and managed a large-scale drug smuggling conspiracy at the same time. He even acknowledges that "[a] drug trafficking offense is an offense against the community." It is commendable that his family's wellbeing is forefront in his mind and that it may deter him from future criminal conduct. However, their welfare was an insufficient deterrent at the time of the instant offense, and it is not the Court's obligation to lessen the burden that Williamson placed on them in the first place.

To the extent that Williamson otherwise relies on his family's situation as an extraordinary and compelling reason for release, it is not akin to those family circumstances described as extraordinary and compelling by the Sentencing Commission. See U.S. Sentencing Guidelines § 1B1.13 Application n.1(C) (describing as extraordinary and compelling family circumstances the death or incapacitation of the defendant's minor child's caregiver or the incapacitation of the defendant's spouse or partner where the defendant would be the only available caregiver).

Williamson contends that his criminal history does not reflect his character and that he has used his time in custody to assess the risks versus rewards of criminal activity. He relies on his self-described "exceptional rehabilitation" as support for his release. He describes his "performance while in custody [as] clearly show[ing] a man who has profited and matured" and describes himself as "a model inmate all of his time in custody", evidenced in part by his

6

"consistent work history for over the past decade" and only "one minor infraction that did not result in loss of any privileges or good time." He believes that he is able to "re-enter society with the mental and vocational skills necessary to ensure that he is [a] dependable and responsible member of society." He submitted a July 2020 letter from All Systems Restored HVAC & Electrical stating that upon his release, the business "is prepared to offer him full-time employment at 40 hours per week with benefits after 90 days of employment to assist him with his transitional plan."

Williamson has done many things well while in the custody of the Bureau of Prisons, evidenced in part in his May 2019 Individualized Reentry Plan. At the time, he had earned his GED and participated in classes, he was working and received "satisfactory work reports from the detail supervisor", and he had no disciplinary incidents in the previous six months. It is apparent from letters he submitted that his family and close friends love him, believe in him, and have seen him grow while incarcerated. And, as noted above, All Systems Restored is ready to offer Williamson employment upon release. This community support system is encouraging for Williamson, now and in the future.

Yet, it was also noted in his May 2019 Individualized Reentry Plan that "[s]ince last team meeting he has not completed any programs due to lack of interest", he had "declined Drug Education classes", and he had "not saved any money for release as recommended due to lack of interest." He was encouraged to enroll in "ACE (Grammar Refresher, Math Refresher, Critical Decision Making) or a Vocational Education classes (CDL, Car Care Maintenance, Welding)" and other "Apprenticeship programs (Baker, Cook, Electrician, Maintenance, HVAC, etc.) for [him] to obtain skill for future employment". It is not known whether Williamson heeded that advice and pursued further education and vocational training. At the time of his May 2019 team meeting, in addition to his GED courses, he had participated in the following classes: study of ethics, psychology self-study, criminal thinking processes, injury prevention, men's health, parenting, crochet, health fair, keyboarding, and wellness at risk. As noted above, the last time he had participated in a class was May 2018.

Williamson's earning of his GED, work performance and apparent consistent work history, and self-described nearly clean disciplinary history are important steps in the right direction. But, his recorded lack of interest in the pursuit of educational or vocational training or saving money – all in preparation for reentry into the community – does not reflect "exceptional rehabilitation", much less

7

Case 1:06-cr-00474-NCT   Document 397   Filed 03/08/21   Page 7 of 9

> support extraordinary and compelling reasons for release. And, while he notes that he has served 100 percent of what would be a ten-year mandatory minimum sentence under present 21 U.S.C. § 841(b)(1)(A), he has served [just over] fifty percent of [the low end of] his guideline sentence, (see Inmate Data [Doc. #386-1]).
>
> Finally, Williamson understandably expresses concern about contracting COVID-19 while in custody. Initially, he "report[ed] that he does not have any health issues and that he is generally healthy", but that "the threat from COVID- 19" combined with his other bases for relief constitutes an extraordinary and compelling reason for relief. More recently, he contends that his chronic allergy problems can cause an asthma attack and COVID-19 "can become life threatening." He describes a November 2020 outbreak of COVID-19 at FCI Ashland where he is housed, the facility's inability to keep inmates safe, and the lack of mask-wearing, social distancing, and medical care.
>
> Williamson's Presentence Report notes his "chronic allergies" for which he took medication. Yet, suffering from allergies is not among the medical conditions recognized by the Centers for Disease Control and Prevention as increasing the risk of severe illness from the virus that causes COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated [Feb. 22, 2021]).

(Mem. Op. & Order at 11-16 (footnote 3 omitted) (Jan. 29, 2021) [Doc. #394].)

FCI Ashland has a significant history of COVID-19 but, as of March 5, 2021, reports no inmates and seven staff members positive. Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (reporting six inmates who have died and 340 inmates and sixty-two staff members who have recovered). In addition, the Bureau of Prisons has begun administering the COVID-19 vaccine to staff and inmates. On January 4, 2021, it published its updated COVID-19 Vaccine Guidance recommending that vaccinations first be offered to correctional staff "to decrease the possible introduction of SARS-CoV-2 into institutions and thus protect inmates" then offered to inmates according to priority

8

levels. Fed. Bureau of Prisons Clinical Guidance, COVID-19 Vaccine Guidance (Jan. 4, 2021 v.7.), available at https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. As of March 5, over 71,000 doses have been administered across Bureau of Prisons facilities, including FCI Ashland where 109 staff members and ninety-eight inmates have been fully inoculated. https://www.bop.gov/coronavirus/.

Although it is now determined that Williamson would no longer qualify as a career offender were he sentenced today, neither that change, nor, as explained in the previous Memorandum Opinion and Order, "the change in 21 U.S.C. § 841(b)(1)(A), nor Williamson's non-violent background, efforts towards rehabilitation, low recidivism risk, family circumstances, and community support, nor COVID-19", (Mem. Op. & Order at 17), even when considered together, are extraordinary and compelling reasons to release Williamson.[1]

For the reasons explained in this Memorandum Opinion, IT IS HEREBY ORDERED that Defendant Rodney Anton Williamson's pro se Motion for Reconsideration [Doc. #395] is DENIED.

This the 8th day of March, 2021.

                                                     /s/ N. Carlton Tilley, Jr.
                                                    Senior United States District Judge

---

[1] As before, "[b]ecause it is determined that there are no extraordinary and compelling reasons warranting a sentence reduction, it is unnecessary to assess the application of the factors from 18 U.S.C. § 3553(a)." (Mem. Op. & Order at 17 n.4.)

9