IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:06CR474-1 |
| | ) | |
| | ) | |
| RODNEY ANTON WILLIAMSON | ) | |

**MEMORANDUM ORDER**

This matter is before the Court on Defendant Rodney Anton Williamson's pro se Motion to Reconsider Because of Intervening Circumstances [Doc. #399] and Motion to Amend Motion for Reconsideration [Doc. #401]. For the reasons explained below, the Motion to Amend is granted and the Motion to Reconsider is denied.

Williamson's efforts towards compassionate release began in October 2020 when he first moved for a reduced sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). After the Government responded, the Fourth Circuit Court of Appeals issued its decision in United States v. McCoy, 981 F.3d 271 (2020), and the parties were afforded the opportunity to – and did – submit further briefing on the impact, if any, of that decision on Williamson's motion. The motion was denied because Williamson failed to show extraordinary and compelling reasons warranting a sentence reduction. (Mem. Op. & Order [Doc. #394].) Among other reasons, it was determined that the state convictions used to enhance his

statutory penalties likely no longer supported that enhancement, but that his guideline range remained the same because he was still a career offender. (Id.)

After Williamson asked the Court to reconsider its denial of his motion, the United States Probation Office filed a memorandum confirming that the state convictions that served as predicates for Williamson's statutory enhancements "appear[ed]" to no longer qualify as such, as the Court earlier determined, but also noting that he was no longer a career offender and recalculated his guideline range accordingly, based on a total offense level of 38 and a criminal history category of III. (U.S. Probation Mem. [Doc. #396].) Addressing Williamson's motion to reconsider, the Court acknowledged its erroneous determination that he remained a career offender and recalculated his guideline range to be 292 to 365 months' imprisonment, rather than 360 months to life. (Mem. Op. & Order [Doc. #397].) Nevertheless, for the reasons explained in that Memorandum Opinion and Order, he failed to show extraordinary and compelling reasons warranting relief. (Id.)

In light of the Court's determination that Williamson is no longer a career offender, he now seeks reconsideration so the Court may assess arguments he believes were not addressed at the time of his 2007 sentencing. He also contends that due process and the interests of justice require appointment of counsel to protect his constitutional rights in this proceeding. Williamson's trial counsel filed and preserved his objections prior to sentencing, and subsequently appointed counsel represented him on appeal. The Sixth Amendment right to counsel does not extend beyond the first appeal of right. Pennsylvania v. Finley, 481 U.S. 551,

2

555 (1987). In exceptional circumstances, due process may require appointment of counsel in certain postconviction proceedings, but this is not such a motion given the nature of Williamson's arguments. See United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000) (denying appointment of counsel for § 3582(c) motion to reduce sentence). Cf. 18 U.S.C. § 3006A(a)(2)(B) (authorizing the court to provide counsel to a financially eligible person seeking relief under 28 U.S.C. §§ 2241, 2254, or 2255 when "the interests of justice so require"). Accordingly, his request for appointment of counsel is denied.

Initially, Williamson argues that he "has not been afforded the opportunity to review" the sealed United States Probation Office's Memorandum [Doc. #396], but that Memorandum has since been mailed to Williamson who has filed no objections to its contents, (see Text Order (Mar. 29, 2021); see generally Docket).[1]

Next, citing the transcript for his sentencing hearing, Williamson argues that his objections to the Pre-Sentence Report ("PSR") [Doc. #167] were not considered and that he "has never been afforded a full and fair opportunity to object to any factual inconsistencies that may exist that are not supported by the record". In his position paper filed prior to sentencing, Williamson objected to (1) the information in paragraphs 1 through 26 because he maintained his innocence, (2) the sufficiency of the evidence supporting the jury's finding that Williamson was guilty of distributing more than 400 kilograms of cocaine hydrochloride, (3) his

---

[1] A subsequent sealed United States Probation Office Memorandum [Doc. #400] has also been mailed to Williamson. (See Text Order (Apr. 13, 2021).)
3

base offense level because he maintained his innocence, (4) the two-point enhancement for his supervisory role in the offense conduct, (5) his total offense level because he maintained his innocence, (6) his career offender status and criminal history category because he maintained his innocence, and (7) the mandatory life sentence because of his innocence.

Williamson's contention that he is innocent was addressed at sentencing and elsewhere.[2] At the sentencing hearing in response to Williamson's pro se statements to the Court, the Court responded, "I understand your position of not being guilty. You know, as I heard the evidence. It seemed to me, the evidence was credible, and it was sufficient evidence for the jury to make a finding." (Sentencing Tr. 5:9-12 (Dec. 7, 2007) [Doc. #229].) On appeal, the Fourth Circuit Court of Appeals found that "[t]he government presented extensive evidence of Williamson's guilt". (Op. of U.S. Ct. App. at 9 [Doc. #314].) To the extent that Williamson separately objected prior to sentencing to the amount of drugs for which the jury held him accountable, he presented no argument in those filed objections nor is there anything on the record to support that position.

Not only does the record support Williamson's guilt for distributing more than 400 kilograms of cocaine hydrochloride, but it also shows that his offense

---

[2] Because Williamson bases nearly every one of his objections to the PSR on his purported innocence, the sufficiency of the evidence in support of the jury's verdict addresses those objections. In addition, for reasons other than those Williamson advanced prior to his sentencing and as previously explained by the Court, Williamson is no longer a career offender or subject to a mandatory life sentence.

4

level was properly enhanced two points for his role as a manager or supervisor of fewer than five participants pursuant to United States Sentencing Guidelines ("Guidelines") § 3B1.1(c)[3]. Williamson argues in his motion that "the trial record does not support a finding that he managed anyone" and that neither the Court nor the PSR assessed the requisite factors in § 3B1.1 of the Guidelines. However, those factors in application note 4 of § 3B1.1 are to assist the court "[i]n distinguishing a leadership and organizational role from one of mere management or supervision". Nevertheless, application note 2 of § 3B1.1 requires that the defendant "have been the organizer, leader, manager or supervisor of one or more other participants[4]" "[t]o qualify for an adjustment under this section" (emphasis added). See also United States v. Cameron, 573 F.3d 179, 185 (4th Cir. 2009) (quoting United States v. Sayles, 296 F.3d 219 (4th Cir. 2002)). The evidence presented at trial and described in the PSR show that Williamson managed or supervised one or more participants. For example, Williamson "directed" "CI-1" "to oversee the delivery of 50 kilograms of cocaine hydrochloride from Greensboro to a warehouse in New York, NY", "to pick up" two individuals at the Charlotte Douglas International Airport after which he drove them to meet Williamson where they discussed "a 50 kilogram cocaine deal", and "to pick up a courier at the

---

[3] Section 3B1.1(c) and its application notes are the same in the 2007 Guidelines under which Williamson was sentenced and the 2018 Guidelines currently applicable.

[4] "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S. Sentencing Guidelines § 3B1.1, application n.1.

5

Charlotte Douglas International Airport" who was "transporting 25 kilograms of cocaine" and "take the courier to the Red Roof Inn". (PSR ¶¶ 11, 17, 20; see also e.g., Trial Tr. 53:1-55:21 (Aug. 16, 2007) [Doc. #226].) The two-point enhancement for Williamson's role in the offense is appropriate.

Next, in his motion, Williamson "objects to the Government Witness trial testimony being considered at sentencing" because it "is perjury and unreliable" and "should not have been admitted at trial or considered by the trial court" and it "is illegal fruit of the Sixth Amendment Violation (January 29, 2007 recording) that should not have been admitted in trial or considered by the Court to support any findings of facts that may increase [his] offense level." After his sentencing, Williamson pursued an appeal which involved at least some of these issues. The Fourth Circuit Court of Appeals ultimately found that, although the Government "conceded that it was plain error to admit the recordings at trial", there was "no basis . . . for concluding that this plain error affected Williamson's substantial rights because he has not shown that the error affected the outcome of his trial." (See Op. of U.S. Ct. App. [Doc. #254]; Op. of U.S. Ct. App. [Doc. #282]; Op. of U.S. Ct. App. (noting the "extensive evidence of Williamson's guilt, independent of the taped recording") [Doc. #314].) It does not appear as though the admission of the January 29, 2007 recording at trial affected Williamson's offense level at sentencing. To the extent that Williamson did not pursue any of these arguments on direct appeal although he could have done so at the time, the propriety of assessing them as part of a § 3582(c)(1)(A) motion is uncertain. Nevertheless,

6

nothing before the Court supports a finding that any witness testimony was perjurious or improperly contributed to the calculation of Williamson's offense level.

Having assessed Williamson's objections to his sentence that he contends were not addressed at the time, it is important to note that he moved for a reduced sentence based on extraordinary and compelling reasons but failed to meet his burden of showing that such reasons exist here. Nothing in the foregoing analysis of Williamson's objections changes that conclusion. Neither does a review of the contents of the recent April 12, 2021 United States Probation Office Memorandum [Doc. #400] and Williamson's motion to amend. The April 12, 2021 Memorandum provides a summary of Williamson's post-conviction conduct. To his credit and as he previously argued, he has committed only one disciplinary infraction, and that was in 2009. He completed 426 hours of education courses between 2009 and 2018 and his GED in 2010. He is assigned to work in the Central Tool Room, "a security based job" that "requires passing an internal investigation and background check" according to Williamson. His April 14, 2021 Individualized Needs Plan included with his motion to amend notes that he "receives good work reports from his detail supervisor", "has been participating in the Resolve Program and [has] almost completed it", "has requested to be enrolled in the Non-Residential Drug Program", "is currently enrolled in a Post Secondary Canine Specialist class", "currently has saved $500.00 in his pre-release account as recommended", and "has maintained clear conduct." This review shows marked improvement in

7

Williamson since his May 2019 report in which it was stated that "[s]ince last team meeting he has not completed any programs due to lack of interest", he had "declined Drug Education classes", and he had "not saved any money for release as recommended due to lack of interest." (See Mem. Op. & Order at 15 [Doc. #394].) In addition, as previously noted, "[i]t is apparent from letters he submitted that his family and close friends love him, believe in him, and have seen him grow while incarcerated" and he appears to have a job awaiting him with All Systems Restored. (Id. at 14-15.)

Williamson's earning of his GED, employment, and discipline within the Bureau of Prisons are commendable, as is his improvement in other areas since his May 2019 Individualized Reentry Plan. However, these efforts are not themselves extraordinary and compelling, but are expected of all inmates, although not all successfully pursue them. And, even coupled with the bases already addressed – the changes in the law affecting Williamson's statutory and Guidelines penalties, disparate sentencings among co-conspirators, his non-violent background, his low risk of recidivism, his family circumstances, and COVID-19[5], (see Mem. Op. & Order [Doc. #394], Mem. Op. & Order [Doc. #397]), Williamson has not met his burden of showing extraordinary and compelling reasons warrant relief.

---

[5] As of May 21, 2021, the Bureau of Prisons has administered over 179,700 doses of the coronavirus vaccine among its facilities, and 133 staff members and 728 inmates at FCI Ashland (where Williamson is housed) are fully inoculated. Fed. Bur. of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/. No inmates are reported as presently infected. Id. (reporting one staff member presently infected).

For the reasons explained in this Memorandum Opinion, IT IS HEREBY ORDERED that Defendant Rodney Anton Williamson's pro se Motion to Amend Motion for Reconsideration [Doc. #401] is GRANTED and his pro se Motion to Reconsider Because of Intervening Circumstances [Doc. #399] is DENIED.

This the 24th day of May, 2021.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge