IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:06CR474-1 |
| | : | |
| RODNEY ANTON WILLIAMSON | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION
TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

NOW COMES the United States of America, by and through Sandra J. Hairston, United States Attorney for the Middle District of North Carolina, and responds to Defendant Rodney Anton Williamson's second motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 412 [Motion]).

## Summary

Following the Fourth Circuit's January 2022 decision affirming the denial of his first compassionate release motion (*see* ECF No. 409), Williamson once again moves for compassionate release, asserting many of the same sentencing-based arguments. Williams claims that his sentence, despite being commuted in 2017 from life in prison to 360 months, remains "unusually long," and, in combination with his "individualized circumstances," justifies compassionate release.

The Court has previously considered each of Williamson's arguments regarding changes to the law—first, following his initial motion in 2020, and then once again in response to each of his three (3) subsequent motions seeking reconsideration. On each occasion, this Court set forth in detailed opinions its reasoning why Williamson had not established extraordinary and compelling reasons. The passage of two years does not alter the validity of those conclusions. There is no "gross disparity" between Williamson's sentence and the sentence he would be eligible for under current law. Moreover, most of the "individualized circumstances" Williamson offers in support are recycled allegations of legal error, long-rejected as meritless, that do not constitute extraordinary and compelling reasons. Although Williamson appears to be doing well in BOP custody, he has not shown any basis for compassionate release. The motion should, once again, be denied.

## Background

The government incorporates by reference the procedural history and facts of the case as summarized in its previous responses to Williamson's filings. (ECF Nos. 386, 390). Williamson, currently housed at FMC Butner, is serving a 360-month sentence for drug conspiracy. His expected release date is December 27, 2031. *See* Exhibit A, Inmate Data, at 3; BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Apr. 5, 2024). He has served over 16 years in prison—approximately two-thirds of his statutory term. *See*

Exhibit A at 3.

## Discussion

Williamson has once again failed to demonstrate extraordinary and compelling reasons for release. Even if he had, the 18 U.S.C. § 3553(a) factors do not support release. This Court should deny the motion.

Courts have long recognized that they do not have "unfettered jurisdiction to modify criminal sentences." *United States v. Tyler*, No. 1:19CR71, 2023 WL 4763735, at *3 (M.D.N.C. July 26, 2023) (citing *United States v. Goodwyn*, 596 at 235). In fact, a court may only modify a sentence when the Federal Rules of Criminal Procedure or a statute, like 18 U.S.C. § 3582, authorizes it. *Tyler*, 2023 WL 4763735, at *3. The Fourth Circuit has further counseled that 18 U.S.C. § 3582(c)(1)(A), which allows for compassionate release, is only warranted in the "most grievous cases." *Id.* (quoting *United States v. McCoy*, 981 F.3d 271, 287 (4th Cir. 2020)).

Under the compassionate release provisions of 18 U.S.C. § 3582(c)(1)(A)(i), the district court may modify or reduce an inmate's sentence "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden

of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).[1] If this condition is met and the motion is properly before the district court, the court must also find, after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable, that "extraordinary and compelling reasons warrant a reduction" of the defendant's sentence.

However, a reduction under § 3582(c)(1)(A) must also be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii). Those have recently been amended and came into effect on November 1, 2023. Under U.S.S.G. § 1B1.13(b), there are four enumerated examples of extraordinary and compelling reasons: (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; and (4) circumstances in which the defendant is a victim of abuse. *See* U.S.S.G. § 1B1.13(b). There are two additional areas provided in the current guideline: "other reasons," defined as a reason of similar gravity to those in (1) through (4); as well as "unusually long sentences," of which the defendant has served at least 10 years, and a change in the law results in a

---

[1] The Guidelines now contemplate that the defendant can directly petition the district court for compassionate release. *See* U.S.S.G. § 1B1.13(a). Williamson attaches a copy of a November 1, 2023 request to his unit team seeking compassionate release, to which a staff member responded denying the request and directing him to submit a motion to the sentencing court. (Motion at Exhibit A, p.2). Williamson also submitted administrative requests in connection with his last motion. (ECF No. 386 n.6). The government does not contest that Williamson has satisfied the exhaustion requirement.

4

"gross disparity" between the defendant's original sentence and how the defendant would now be sentenced. *See* U.S.S.G. § 1B1.13(b)(5)–(6). Rehabilitation, though it can be considered in combination with other factors to establish extraordinary and compelling reasons, alone is insufficient. U.S.S.G. § 1B1.13(d). In sum, extraordinary and compelling is an "exceptionally high standard for relief" and reductions are limited to those cases which are "truly extraordinary and compelling." *McCoy*, 981 F.3d at 287.

Here, Williamson asserts that his 360-month sentence for drug conspiracy (reduced from life in prison following an executive grant of clemency in 2017) is an "unusually long" sentence that, when combined with his individual circumstances, constitutes extraordinary and compelling reasons due to changes to the law, defects in his conviction and/or sentence, and the amended policy statement. (Motion at 2-3). As outlined above, the amended compassionate release policy statement adds a new category for "unusually long" sentences. Paragraph (b)(6) of the policy statement now provides that:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the *Guidelines Manual* that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but **only where such change would produce a gross disparity** between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

5

U.S.S.G. § 1B1.13(b)(6) (emphasis added).[2]

It is undisputed that at least two changes in the law are relevant to Williamson's case. As explained in the Court's denial of Williamson's first motion, the state court drug convictions used for Williamson's § 851 enhancement (mandating the original life sentence) would no longer qualify as "serious drug felony" predicates following the First Step Act. (Mem. Opin. & Order of 1/29/2021 – ECF No. 394, at p. 8). In its January 2021 Order denying relief, the Court noted Williamson would face a mandatory minimum sentence of ten years, rather than life, if sentenced today. (*Id.*). Moreover, as acknowledged by the Court in its order denying Williamson's motion for reconsideration, Williamson also would no longer qualify as a career offender under current law, because the instant offense, federal conspiracy, is no longer considered a controlled substance offense under the Guidelines. (Mem. Opin. & Order of 3/8/2021 – ECF No. 397, at p.4).

Notwithstanding these changes in the law, Williamson's 360-month sentence remains within the prescribed statutory range, as well as within the

---

[2] It is the Department of Justice's position that although Congress delegated broad authority to the Sentencing Commission, U.S.S.G. § 1B1.13(b)(6) is contrary to the text, structure, and purpose of 18 U.S.C. § 3582, and is thus invalid. However, this Court need not reach that question to decide Williamson's motion because even if the (b)(6) category were an appropriate exercise of the Commission's authority, Williamson's sentence would not meet the (b)(6) criteria as explained herein.

Guidelines. Under current law, Williamson would face a statutory range of 10 years to life in prison. And under the current Guidelines, without career offender status, Williamson would have a total offense level of 38 and a criminal history category of III, leading to a Guidelines range of 292 to 365 months' imprisonment—placing the 360-month sentence near the high end of the Guidelines. (Mem. Opin. & Order of 3/8/2021, at p.4). As noted by the district court in its last denial, the difference between the new Guidelines range and Williamson's sentence is not an "exceptionally dramatic" one. (Mem. Opin. & Order of 7/22/21, at p.10 (citing *McCoy*)). Accordingly, regardless of whether Williamson's 360-month sentence is considered "unusually long," intervening changes in the law do not produce a "gross disparity" with the sentence Williamson would receive under today's Guidelines. *See United States v. Campbell*, 2023 WL 7220732, at *4 (M.D.N.C. Nov. 2, 2023) (even though 10-year mandatory minimum no longer applied, defendant's Guideline range would remain 110-137 months; adjudged sentence of 120 months fell squarely within range); *see also United States v. Mitchell*, 2024 WL 129761, at *3 (D. Md. Jan. 11, 2024) (no gross disparity even where previous Guideline range was 262-327 months and new range would be 161-180 months); *United States v. Curry*, 2024 WL 203231, at *3 (W.D.N.C. Jan. 18, 2024) (one-month difference between actual sentence and top of current Guideline range not a gross disparity). Williamson's case bears no resemblance to the cases in which

courts have found compassionate release based on sentence disparity appropriate.³ *See*, *e.g.*, *United States v. Brown*, 78 F.4th 122, 131 (4th Cir. 2023) (reversing district court's denial of relief to defendant serving 57-year stacked § 924(c) and drug sentences, finding there "is a clear 'gross disparity' between Brown's sentence and the sentence Congress now believes to be an appropriate penalty for his conduct"—i.e., twenty years' difference) (quoting *United States v. McCoy*, 981 F.3d 271, 285 (4th Cir. 2020)).

Perhaps acknowledging this reality, Williamson dredges up the same complaints of error that have already been exhaustively considered—and rejected—by the district court and the Court of Appeals at various points throughout the history of his case. As established by *United States v. Ferguson*, 55 F.4th 262 (4th Cir. 2022), arguments concerning the validity of convictions or sentences cannot be considered grounds for compassionate release. *Ferguson*, 55 F.4th at 270 ("Because § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements."). While acknowledging that assertions of

---

³ Williamson attempts to use the historical and current mandatory *minimum* sentences as the benchmark for determining whether a gross disparity exists. (Motion at 9). This is the wrong approach. The relevant figure is what sentence the defendant is actually serving, compared to what he *could have* received if sentenced under current law. Here, those figures overlap.

8

legal error in a conviction or sentence are not appropriate bases for compassionate release under *Ferguson*, Williamson characterizes these issues as "individualized circumstances" relevant under a *McCoy*/sentence disparity analysis. Once again, he raises the issue of his recorded statement made after his Sixth Amendment right to counsel had attached, arguing that this recording tainted the evidence from the government's witnesses as to drug quantity and made their testimony "illegal fruit" of the Sixth Amendment violation. (Motion at 6). Williamson claims that "[t]his illegal fruit has never been addressed by the Court or the government in any of Petitioner's previous litigations." (Motion at 7). Contrary to Williamson's assertion, this issue was flatly rejected by the Court of Appeals when it found on direct review that the admission of the recording, though acknowledged as plain error by the government, had not affected Williamson's substantial rights:

> The government has conceded that it was plain error to admit the recordings at trial. We find no basis, however, for concluding that this plain error affected Williamson's substantial rights because he has not shown that the error affected the outcome of his trial. Williamson has not established "'that the jury actually convicted' [him] based upon the trial error." [*United States v.*] *Godwin,* 272 F.3d [659,] [] 680 [(4th Cir. 2021)] [internal citation omitted]. The government presented extensive evidence of Williamson's guilt, independent of the taped recording. One witness, Christopher Swaney, testified to his own extensive dealings with Williamson, which involved ever-increasing quantities of cocaine. Another witness, Glenson Isaac, testified that he sold Williamson ten kilograms of cocaine on one occasion in 2004, and multiple kilograms of cocaine on several other occasions. Michael Sealy testified that he accompanied Williamson to New York to pick up

9

>   five kilograms of cocaine. Drug Enforcement Administration agent James Cryan corroborated Sealy's testimony with his own contemporaneous surveillance of Williamson. Cryan testified that he watched Williamson, Sealy, and a confidential informant obtain a black duffel bag from the occupant of a white van; take the duffel bag to Sealy's apartment; and leave the apartment to meet with another vehicle at a McDonald's. Shortly thereafter, officers searched the vehicle and Sealy's apartment, where they found eleven kilograms and six-and-a-half kilograms of cocaine, respectively. The search of Sealy's apartment also netted approximately $20,000 in currency. The trial transcripts are overflowing with similar evidence. While the taped conversation was surely damaging, Williamson has not shown that its absence would alter the outcome of his trial. "Where the evidence is overwhelming and a perfect trial would reach the same result, a substantial right is not affected." *Id.* (citing [*United States v.*] *Moore,* 11 F.3d [475,] [] 482 [(4th Cir. 1993)]).

*United States v. Williamson*, 706 F.3d 405, 412-13 (4th Cir. 2013). Calling an issue previously decided by the Court of Appeals an "individualized circumstance" simply attempts an end-run around *Ferguson*, and this Court should reject it, as it has previously done. *See* Mem. Order of 5/24/21, at p. 6; Mem. Opin. & Order of 7/22/21, at p. 5-6. Moreover, the issue of "individualized circumstances" is only relevant for defendants who have made a showing of an "unusually long" sentence, which changes in the law have made grossly disparate from what would be adjudged today. *See* U.S.S.G. § 1B1.13(b)(6). Williamson has not made such a showing.

Even had Williamson shown extraordinary and compelling circumstances, which the government strongly contends he has not, the § 3553(a) factors would not support relief, even through today's lens. *United*

10

*States v. Malone*, 57 F.4th 167, 177 (4th Cir. 2023). Williamson has served approximately two additional years in prison after the Court of Appeals affirmed the denial of his last motion. *See* Exhibit A at 3. During that time, he has had one disciplinary infraction[4], for destroying property $100 or less. *See* Exhibit B, Disciplinary Record. To his credit, he has completed over 200 hours of educational and vocational coursework during that period. *See* Exhibit C, Education Data Transcript. He achieved a downgrade of both his security classification and his recidivism risk level to Low. *See* Exhibit D, Inmate Profile, at 2. Further, Williamson has worked at several prison jobs, including as a medical admin orderly and a suicide watch orderly. *Id.* Williamson is to be commended for these positive strides, but they do not outweigh the other § 3553(a) factors supporting his Guidelines sentence. *See United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023) ("Taking classes while incarcerated is common rather than extraordinary."); *United States v. Logan*, 2021 WL 1221481, at *8 (D. Minn. Apr. 1, 2021) ("Prisoners are *supposed* to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary. . . .").

---

[4] Williamson denies the infraction, claiming this incident resulted from his being issued an "altered" bed mattress upon his arrival at FMC Butner. (Motion at 10).

11

Williamson was found guilty by a jury of distributing over 400 kilograms of cocaine hydrochloride as a leader in a large-scale international drug trafficking organization spanning from New York to the British Virgin Islands. A sentence reduction below 360 months would not serve the purposes of sentencing, including just punishment, promoting respect for the law, protection of the public, and general and specific deterrence.

## CONCLUSION

WHEREFORE, as set forth herein, the government requests that the Court deny Defendant's motion for compassionate release.

This the 10th day of April, 2024.

    Respectfully submitted,

    SANDRA J. HAIRSTON
    United States Attorney


    /S/ JULIE C. NIEMEIER
    Assistant United States Attorney
    NCSB #29365
    United States Attorney's Office
    Middle District of North Carolina
    101 S. Edgeworth St., 4th Floor
    Greensboro, NC  27401
    Phone: (336) 333-5351

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was mailed to the following non-CM/ECF participant:

Rodney Anton Williamson
Reg. No. 23534-057
FMC Butner
Federal Medical Center
P.O. Box 1600
Butner, NC 27509

/S/ JULIE C. NIEMEIER
Assistant United States Attorney
NCSB #29365
United States Attorney's Office
Middle District of North Carolina
101 S. Edgeworth St., 4th Floor
Greensboro, NC  27401
Phone:  (336) 333-5351

13